1999 OK CIV APP 53

Dinah **FULLER, Plaintiff, and Gloria Smith, Velma T. Taylor, David Hale, Diane Slaten, Clarence Lee Nickell, Karen Nickell, Kerri Zimmerman, and Jon Zimmerman, Plaintiffs/Appellants,**

v.

**SIGHT 'N SOUND APPLIANCE CENTERS, INC., Defendant/Appellee.**

No. 91,292.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 12, 1999.

Certiorari Denied May 4, 1999.

David Humphreys, Luke J. Wallace, Humphreys, Wallace, Humphreys, Tulsa, Oklahoma, For Plaintiffs/Appellants.

Joseph R. Farris, Paula J. Quillin, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, For Defendant/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 Plaintiffs/Appellants Taylor, the Nickells, Slaten, and the Zimmermans seek reversal of a trial court order which granted judgment to Defendant/Appellee (SSAC) on their claims against SSAC for deceit and alleged violations of the Oklahoma Consumer Protection Act (the Act), 15 O.S.Supp.1994 § 751 . et seq.[1] Plaintiffs/Appellants Smith and Hale seek reversal of an order which concluded they were improperly joined as plaintiffs and struck their claims under the Act from the petition.[2] The essence of Consumers'[3] claims is that SSAC sold each of them merchandise represented to be new or original which SSAC knew was reconditioned, reclaimed, used, damaged or secondhand.[4]

## STANDARD OF REVIEW

¶ 2 SSAC attacked all of the claims on three grounds and the claims by Smith and the Nickells on the additional basis of improper venue, filing a Motion to Dismiss and an alternative Motion to Strike. In doing so SSAC relied upon evidentiary material outside the petition. After arguing that SSAC's motion should be treated as a motion for summary judgment and listing the material facts which prevent dismissal and summary judgment, Consumers attached additional evidentiary material outside the petition to support their arguments. Because the trial court did not expressly exclude the parties' evidentiary materials, we treat its orders which disposed of claims on the merits (the claims by Taylor, the Nickells, Slaten, and the Zimmermans) as a summary judgment. *See* 12 O.S.1991 § 2012(B).

¶ 3 In reviewing those orders, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and SSAC is entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Consumers. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the

1. All Plaintiffs/Appellants alleged violations of 15 O.S.Supp.1994 § 753(6) and (20) of the Act. Actually only Hale, Slaten and the Zimmermans may argue violations of § 753(20) because subsection 20 was not added to § 753 until after the other Plaintiffs/Appellants' transactions had already occurred.

2. The order is tantamount to a dismissal without prejudice and became final and appealable, along with the judgments against the other Plaintiffs/Appellants when the trial court entered judgment in favor of Dinah Fuller, resolving the only outstanding claim. This appeal was filed within thirty days of the filing of the order granting that judgment.

3. We use the term "Consumers" to refer to the Plaintiffs/Appellants collectively. Unless the specific identity of one or more of Plaintiffs/Appellants is material to the issue, we will use this term even though all of the Plaintiffs/Appellants may not be affected by the issue involved.

4. According to § 753(6) of the Act, a person engages in an unlawful practice who, in the course of business "[r]epresents, knowingly or with reason to know, that the subject of a consumer transaction is original or new, if he knows that it is reconditioned, reclaimed, used, or secondhand."

record which was before the trial court rather than on one that could have been assembled. *Frey v. Independence Fire and Casualty Co.*, 1985 OK 25, 698 P.2d 17.

## ANALYSIS

### STATUTE OF LIMITATIONS

¶ 4 The trial court concluded that (1) the claims of Taylor and the Nickells were barred by, and that (2) "the statute of limitations is not tolled in that such Plaintiffs would not have been members of any class action filed in Garfield County, Oklahoma," citing as its authority *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Consumers agree the three-year period provided by § 95(2) applies, but argue *American Pipe* requires tolling of the limitation period while the class action was pending. SSAC contends the one-year period provided by applies and that *American Pipe* requires that the limitation period not be tolled under the circumstances of this case.[5]

¶ 5 Because Taylor and the Nickells alleged SSAC violated the Act "in the summer of 1992" and on "January 19, 1994," respectively, but did not file their petition until February 5, 1997, both of their claims would be barred under either § 95(2) or (4), *if* the trial court's interpretation that *American Pipe* does not require tolling is correct. Therefore, we begin our analysis with that legal issue.

### Tolling

 ¶ 6 *American Pipe* held "the *commencement* of a class action suspends the applicable statute of limitations as to *all asserted members of the class* who would have been parties had the suit been permitted to continue as a class action," 94 S.Ct. at 766. A subsequent case, *Crown, Cork & Seal Company Inc., v. Parker*, 462 U.S. 345, 354,

103 S.Ct. 2392, 2397–2398, 76 L.Ed.2d 628 (1983) concluded the *American Pipe* rule applies not only to those members who intervene after the denial of class certification but also those who file actions on their own and that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the *putative* class until class certification is denied." (Emphasis added.)

¶ 7 SSAC argues there was no tolling because *American Pipe* limited the effect of its ruling to individuals who were denied class status because of an inability to satisfy the numerosity requirement of the federal class action rules. Although *American Pipe* noted that it was addressing only a case where class certification was denied because of lack of numerosity, nothing in *American Pipe* suggests that it would be improper to apply the rule in other cases. Any doubt about the application of *American Pipe* to cases involving classes which were denied certification on other grounds was removed by *Crown, Cork & Seal Company Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), which involved a denial based on other factors.

¶ 8 Relying principally upon language in a specially concurring opinion in *Crown, Cork & Seal*, SSAC also argues the tolling rule does not apply because the allegations of the plaintiffs in the Garfield County case were too broad to give SSAC fair notice of the claims. For purposes of this case we need not decide whether such an evaluation of the class action pleadings in the earlier case is required for tolling to apply.

¶ 9 In *Crown, Cork & Seal* the Court concluded that the limitation period for Mr. Parker's individual discrimination action against his employer was tolled until the requested class which would have included Mr. Parker was denied certification in a class action filed by other black individuals alleging racial discrimination in employment.

---

5. Both *American Pipe* and *Crown, Cork & Seal Company Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), a later case relied upon by Consumers, involved tolling of a statute of limitations created by federal law. None of the parties have suggested that Oklahoma, with class action statutes patterned after the Federal Rules of Civil Procedure, should follow a differ-

ent rule, and both parties stated at oral argument that we should follow the decisions of the United States Supreme Court in this regard. Therefore we choose not to prolong the decision in this case by exploring whether those decisions are "binding" on us, but choose to follow them under the circumstances of this case.

The Court concluded the filing of that class action tolled Mr. Parker's individual action, despite the class action complaint's very broad class description. Faced with that decision, we cannot conclude that the much narrower class description involved here did not give SSAC fair notice of the claims in this lawsuit. Although Consumers were not ultimately determined to be part of the class certified in the Garfield County action, they would have been if the class proposed by the Garfield County plaintiffs had been certified. We hold the statute of limitations was tolled by the Garfield County class action.

## Other Limitation Issues

■ ¶ 10 SSAC argues § 95(4)'s one-year period applicable to "an action upon a statute for penalty" applies because the Act provides for civil penalties under some circumstances. *See* 15 O.S.Supp.1994 § 761.1(B) and (C).[6] Consumers argue § 95(2)'s three-year period for "an action upon a liability created by statute other than a forfeiture or penalty" applies.

■ ¶ 11 The test for determining whether a statute is penal or not is whether its purpose is to afford a private remedy to a person injured by the wrongful act, or for the benefit of the state to punish an offense against the state. *Tulsa Ready–Mix Concrete Company v. McMichael Concrete Co.,* 1972 OK 53, 495 P.2d 1279. As evidenced by the Legislature's use of the terms "civil penalty" and "forfeiture," to some extent at least, the Act must be considered to be penal.

■ ¶ 12 However, a statute can be both penal and remedial. *Culbertson v. McCann,* 1983 OK 57, 664 P.2d 388. A "penal action" is one founded entirely on statute and brought with the *sole* object of recovering a penalty or forfeiture imposed as punishment for a specific offense, while a "remedial action" is one brought to obtain compensation or indemnity. *Smith Engineering Works v. Custer,* 194 Okl. 318, 151 P.2d 404 (1944).

■ ¶ 13 The Act authorizes the recovery of damages by either a private citizen, *e.g.,* § 761.1(A), or the Attorney General or the district attorney, *e.g.,*15 O.S.Supp.1994 § 756.1(A)(3), and neither § 761.1(B) nor (C) limits the recovery of civil penalties by the State. Therefore, the Act is penal in some respects and remedial in others, depending on who is suing and what they are seeking to recover. When different portions of the statutes of limitations apply to different portions of a statute that is penal in one respect and remedial in another, they should be so employed. *Cummings v. Board of Education of Oklahoma City,* 190 Okl. 533, 125 P.2d 989 (1942). Because Consumers, in their individual capacities, are seeking only damages, we agree with the trial court that the three-year period applies to their claims.

¶ 14 The Nickells produced undisputed evidentiary material showing their claim arose on January 19, 1994. The limitations period was tolled from October 4, 1994, when the class action was filed, until June 20, 1996, when the Garfield County court denied certification to a class which included the Nickells. When this action was filed on February 5, 1997, only seventeen months of the limitation period had expired. Based upon the undisputed evidence, the Nickells' claim was not time-barred, as a matter of law.

■ ¶ 15 Taylor's claim, however, presents a question of fact on this issue. Taylor alleges her claim arose "in the summer of 1992," and SSAC did not dispute this date. Without a more precise date, it is impossible to determine whether the limitations period, even when excluding the time it was tolled, has run on her claim. Summary judgment on a statute of limitations defense in favor of

6. Section 761.1(B) provides, in pertinent part, that "[t]he commission of any act or practice declared to be a violation of the [Act], if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a *civil penalty*, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000.00) for each violation." (Emphasis added). Section 761.1(C) provides, in pertinent part, that "[a]ny person who is found to be in violation of the [Act] in a civil action ... *shall forfeit and pay a civil penalty* of not more than Ten Thousand Dollars ($10,000.00) per violation, in addition to other *penalties* that may be imposed by the court, as the court shall deem necessary and proper." (Emphasis added.)

the moving party is inappropriate where the evidence establishes a dispute as to the time the limitations period began to run or the running of the limitations period. Unless Taylor's claim is deficient for some other reason, as a matter of law, on remand the trial court must resolve this factual dispute by appropriate proceedings.

## NO DAMAGES

¶ 16 The trial court dismissed the claims of Slaten, the Zimmermans, and the Nickells based upon its conclusion that they had suffered no actual damages. In doing so, the trial court apparently agreed with SSAC's contentions that Consumers have no "actual damages" because there was "no purchase" or because they received either a full refund or substitute merchandise. For this argument SSAC relies on 15 O.S.Supp.1994 § 761.1(A), which, in pertinent part, provides that "[t]he commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the *aggrieved consumer* for the payment of *actual damages* sustained by the customer, and the *aggrieved consumer* shall have a private right of action for damages, including but not limited to, costs and attorney's fees." (Emphasis added.) Consumers claim they are entitled to recover damages for emotional distress, travel and telephone expenses, loss of time, the value of ruined food, the difference in price or quality between what was advertised and what they actually received, and reimbursement for repair expenses—all of which they claim resulted from SSAC's deceptive scheme/practices.

¶ 17 SSAC's purchase requirement appears to be inconsistent with the Act's definition of "consumer transaction" as "the *advertising, offering for sale,* sale or distribution of any services or any property, ... for purposes that are personal, household, or business oriented." 15 O.S.1991 § 752(2). *See also McCormick Piano & Organ Co., Inc. v. Geiger,* 412 N.E.2d 842 (Ind.App. 3 Dist.1980)(concluding that it is not necessary under the Deceptive Consumer Sales Act that a sale actually take place before a supplier may be liable to a consumer for deceptive acts).

¶ 18 Moreover, we are unpersuaded by SSAC's argument that Consumers' alleged loss of time, inconvenience, travel and telephone expenses, and ruined food may not be considered as "actual damages." Oklahoma Courts have allowed the recovery of such damages in tort actions in the past. *See Williamson v. Fowler Toyota,* 1998 OK 14, 956 P.2d 858 (damages for $15.00 for replacement of lock and chain and $30.00 for one hour of billable time in action for trespass); *City of New Cordell v. Lowe,* 1963 OK 265, 389 P.2d 103 (damages for physical discomfort, inconvenience and loss of time in moving out of house two times in action for damages caused of sewage overflow); *Reliable Mutual Hail Insurance Company v. Rogers,* 61 Okl. 226, 160 P. 914 (1916) (actual damages awarded to petitioners in action for wrongful issue of attachment included loss of time, *i.e.,* traveling long distances and appearing in court several times); and *Barnes v. McKinney,* 1978 OK CIV APP 44, 589 P.2d 698 (detriment caused by the defendant's fraud included plaintiff's *loss of time, inconvenience* and expense incurred in recovering his money back). The trial court erred in concluding, as a matter of law, that Consumers suffered no legally cognizable damages caused by SSAC's alleged violations of the Act.

## PROCEDURAL QUESTIONS

### Venue

¶ 19 SSAC contends that the claims by Smith and the Nickells may not be litigated in Tulsa County, because its principal office is in Oklahoma County and the transactions at issue in those claims occurred in Pontotoc County. SSAC argues venue is improper because 12 O.S.1991 § 133 requires "[a]n action for the recovery of a fine, forfeiture or penalty imposed by statute" to be brought in "the county where the cause, or some part thereof arose." Its position that § 133 is applicable is again based on § 761.1(B) and (C), which provide for civil penalties under certain circumstances. As support thereof, SSAC relies on *Carnation Company of Oklahoma v. Superior Court,* 1964 OK 103, 392 P.2d 490.

¶ 20 However, the holding in that case was overruled by *Tulsa Ready–Mix Concrete Company v. McMichael Concrete Co.,* 1972 OK 53, 495 P.2d 1279, and Consumers are not seeking any penalty under the Act. It is undisputed that SSAC operated a place of business in Tulsa County, staffed with its employees and agents. Smith and the Nickells may properly litigate their claims in Tulsa County pursuant to 12 O.S.1991 § 134, which allows an action against a corporation to be brought in the county in which it "is situated," not solely where it "has its principal office or place of business." *See Public Service Co. of Oklahoma v. Hawkins,* 194 Okl. 272, 149 P.2d 783 (1944).

### Misjoinder

¶ 21 Multiple claims may be joined "if the claims arise out of a series of transactions or occurrences and any question of law or fact common to all these persons will arise in the action." 12 O.S.1991 § 2020(A)(1)(b). According to SSAC, all Consumers' claims are improperly joined because they are "several separate and distinct claims by different plaintiffs arising at different times with regard to different items and different stores all against a single defendant," and there are no common questions of law. The trial court apparently agreed because it granted SSAC's motion to strike as to the claims of Hale and Smith on that theory.[7]

¶ 22 According to Consumers' allegations and the evidentiary material supporting them, each plaintiff was subjected to and damaged by SSAC's common scheme of advertising and selling used, reconditioned, reclaimed, damaged or secondhand merchandise without disclosing to them that the product was of such condition.

¶ 23 Section 2020 is based on Federal Rule 20, and we may look to both state and federal jurisprudence on the subject for guidance. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association,* 1997 OK 37, 936 P.2d 916. If we understand *A–Plus* correctly, we are to construe its provisions liberally "in order to promote trial convenience and to expedite the final determination of disputes, all with a view to preventing multiple lawsuits." 1997 OK 37, ¶ 21, 936 P.2d at 926.

¶ 24 It is apparent from this record that Consumers' claims share common questions of fact, to wit, did SSAC have a policy of selling or advertising used or damaged or reconditioned merchandise as new. Moreover, the manner in which SSAC approached the legal arguments in this case, contending that all of the claims should be dismissed upon statute of limitations grounds and for lack of "actual damages," indicates the existence of common questions of law. Given the expressed preference for joinder, we must conclude the trial court abused its discretion in striking the claims of Hale and Smith. *See A–Plus,* 1997 OK 37, ¶ 22, 936 P.2d at 927.[8]

### CONCLUSION

¶ 25 Questions of fact remain concerning whether Taylor's claim is time-barred. Claims of the remaining Consumers are considered timely, as a matter of law. On the evidentiary material in this record, Consumers' claims are not subject to summary judgment in SSAC's favor because of a lack of "actual damages," and there is no improper venue or misjoinder. The trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

HANSEN, J., and BUETTNER, P.J., concur.

---

7. At oral argument, counsel for SSAC conceded that the claims arose out of a "series of transactions or occurrences" for purposes of § 2020, but argued that joinder was inappropriate because there were no common questions of law.

8. We express no opinion on whether the trial court may properly exercise its authority under to order separate trials.